p)AN1EL¡
it is a well established doctrine of the ]aw 0f nations, that the entire discharge of a contract by the laws of a country in which the contract was not made or to be performed, will not be a discharge in any other country. Story’s Conflict of Laws 283.
How far this doctrine is to be recognized by the Courts of any State of this Union, or by the Courts of the United States, in passing upon the legal effect of such a discharge, obtained in any State other than that in which the contract was made or to be performed, whether it is competent for the several States to pass bankrupt or insolvent laws, by which to discharge debtors from the obligation of their contracts ; and if so, upon what contracts and persons such laws are to operate, are questions which have given rise to much discussion, and led to many decisions in the Supreme Court of the United States, and also in the State Courts of several of our sister States. The case of Ogden v. Saunders, 12 Wheat. R. 213, though preceded by some cases in which a contrary doctrine was maintained, is now, I believe, generally relied on, as having settled in the affirmative, the question as to the constitutionality of such laws, so far as they may provide for a discharge of the obligation of debts and contracts made and entered into subsequent to their enactment. As to the extent to which discharges obtained in pursuance of such laws, are to be allowed to operate — Judge Story in his work on the Constitution, 3d vol. 256, briefly sets forth the result of the decision in Ogden v. Saunders, and other decisions of the Supreme Court not in conflict with it, as being; (1.) That they apply to all contracts made within the State, between citizens of the State. (2.) That they do not apply to contracts made within the State, between a citizen of the State *323 and a citizen of another State. (3.) That they do not apply to contracts not made within the State.
It is admitted by the appellant that the debt forming the origin of this suit was contracted, and the bond by which it is evidenced, was executed in Virginia, at a time when all of the contracting parties were residents of the State ; and it is no where alleged that the parties had any other State in contemplation as the place for the performance of the contract, the payment of the debt. The surviving obligor in the bond having moved out of the State of Virginia into the State of Maryland, leaving the debt wholly unpaid, his creditor brought suit against him in a County Court of the last mentioned State, and obtained judgment. The debtor is still a resident of Mamyland; and the present suit is an attachment in chancery — seeking to subject to the payment of the debt certain debts alleged to be due by the home defendants to the absent debtor.
It is admitted that the debt is still unpaid; and the only defence relied on by the absent debtor, is an order of the County Court of Alleghany in Maryland, for his discharge as an insolvent debtor. The order seems to have been regularly obtained upon proceedings had in pursuance of certain acts of Assembly of that State for the relief of insolvent debtors. The fifth section of the act of 1805 authorizes the Court to order an insolvent debtor, who has taken certain steps prescribed in the preceding sections of the act, to be discharged from all debts, covenants, contracts, promises and agreements due from, or owing, or contracted by him before the passage of the act, or at the time of his application, “ provided that any property which he shall hereafter acquire by gift, descent, or in his own right by bequest, devise, or in any course of distribution, shall be liable to the payment of said debts.” The funds in the hands of the garnishees were not acquired in any of the modes mentioned in the proviso : whether they are liable, there *324 fore, to the process of attachment, depends on the va1 lidity of the discharge. The Court below has refused to recognize the yalidity of the discharge; and in so , . , * „ ,, . , , , . doing, would seem to be fully sustained by the authori£jes above cited; in illustration of which it may be well to refer to some further decisions of the Supreme Court, which, in their main features, are similar to the case before us.
In the case of Boyle v. Zacharie and Turner, 6 Peters’ R. 635, the legal effect of a discharge under the same laws of Maryland, by virtue of which the appellant procured the order for his discharge, was the subject of decision.
In that case the debt was contracted in Louisiana, with a citizen of that State, by a citizen of Maryland. Upon a suit brought in the Circuit Court of the United States for the State of Maryland, judgment was confessed by the debtor, “ subject to the legal operation of the defendant’s discharge under the insolvent laws of Maryland.” An execution having been sued out and levied on property of the debtor which had not been acquired in any of the modes that would, under the proviso in the insolvent laws relating to future acquisitions of property, make it liable to the execution, an injunction was obtained to stay proceedings on the execution. On an appeal from an order of the Circuit Court dissolving the injunction, the Supreme Court decided that the discharge was inoperative; and Judge Story, in delivering the opinion of the Court, stated that “ the ultimate opinion delivered by Mr. Justice Johnson, in the case of Ogden v. Saunders, was concurred in and adopted by the three Judges who were in the minority upon the general question of the constitutionality of State insolvent laws, so largely discussed in that case;” “that so far as decisions upon the subject of State insolvent laws had been made by the Court, they were to be deemed final and conclusive ;” and that the memo- *325 random of agreement accompanying the judgment, that it should be subject to the legal operation of the insolvent laws of Maryland, ought not to be deemed an acquiescence on the part of Zacharie and Turner in the validity of the discharge; that it neither admitted its validity, nor waived any rights of Zacharie and Turner, if the laws under which it was obtained were unconstitutional.
In the case of Cook v. Moffat & als., 5 How. R. 295, decided by the Supreme Court at its January term 1847, the decision turned upon the validity of a discharge obtained under the same laws of Maryland. In that case the creditor was a citizen of New York, where the debt was contracted, and the debtor a resident of Maryland. Whilst there was much conflict of opinion among the Judges as to the reasoning upon which the decision ought to rest, there was no difference of opinion as to the result. They were unanimous in deciding that the discharge was of no avail as a defence to the suit brought in the Circuit Court for the district of Maryland. The decision in Boyle v. Zacharie and Turner was approved; and by a majority of the Court the further doctrine was maintained that such a discharge could not be pleaded even in the forums of the State which enacted the law under which it was obtained.
Unless then there be peculiar circumstances attending the case of the appellant, imparting to his discharge special efficacy, and taking it from without the influence of these authorities, his appeal here must fail. Indeed, I understand it to be conceded by the counsel for the appellant, that such must be the result, unless the part taken by the appellee in the proceedings in Maryland, is to make this case an exception to the general rule. It is argued that Gibson, by instituting suit upon his bond, and obtaining judgment thereon, by praying his debtor in custody on the surrender by his bail, by filing, under the statute, allegations impeaching *326 the fairness of the schedule given in by M'Carty, and regularly contesting his discharge, submitted himself voluntarily to the laws of Maryland, and is now precju(je(j from questioning, in any forum, the discharge obtained in pursuance of those laws. The authority mainly relied on in support of this argument, is the case of Clay v. Smith, decided by the Supreme Court of the United Stales, and reported in 3 Peters’ R. 411. In that case it appears that Smith, a citizen of Kentucky, instituted an action of debt in Louisiana, against Clay, a citizen of the last mentioned State, who pleaded his discharge by the bankrupt law of Louisiana. The plea sets out his petition, his surrender of his effects, the schedule of his debts, in which Smith's debt is specified, as also the payment to him of ten per cent., the dividend declared by the assignees of the bankrupt; and the judgment of the Court rendered in pursuance of the consent of more than a majority of his creditors in number and amount. The language of the plea is “upon which said petition, the usual proceedings being had thereon, the said plaintiff and other creditors being parties thereto, the said Supreme Court, by their final decree, pronounced in the premises on the 15th June 1811, declared the said defendant, as well his person as his subsequently acquired property and effects, forever released from all claims, debts and demands, &c. previously due.” I have used in stating the case the language employed by the Judge who pronounced the opinion of the Court, as without particular attention to the statement, there might be some difficulty in apprehending the meaning of the brief opinion by which it is followed. The opinion proceeds: “ This plea is demurred to, and thus the question is raised, whether Smith, by voluntarily making himself party to such proceedings, has not abandoned his extra-territorial immunity from the operation of the bankrupt laws of Louisiana. We are of the opinion that he did ; and *327 was bound by the decision of the State Court to the .... . . „ . „ same extent to which the citizens ot that State were bound.” The true meaning of the decision of the Court is, I think, that Smith, by being party to the steps taken in Court, and by receiving his distributive share of his debtor's estate, had waived the objections which he might otherwise have urged, against the validity of the discharge as to him. Such too is, I think, the view of Judge Story, as to the purport of that decision. In the 3d vol. of his work on the constitution he says: “ If a creditor voluntarily makes himself a party to the proceedings under an insolvent law of a State which discharges the contract, and accepts a dividend declared under such law, he will be bound by his own act; and be deemed to have abandoned his extra-territorial immunity;” and he cites Clay v. Smith as his authority for the proposition. The decision in question, is viewed in the same light by the Supreme Court of New York. In the case of Van Hook v. Whitlock, 26 Wend. R. 54, Chief Justice Nelson, in delivering the opinion of the Court, having occasion to comment on the case of Clay v. Smith, says, “ The facts are so imperfectly stated in the report of the case, that no principle can be deduced from the decision, except we may presume that without the assent of the creditor to the proceedings, by coming in and accepting a dividend, the discharge would have been invalid.”
Thus regarding the decision in Clay v. Smith, I do not think it can be relied on as authority to sustain the validity of the discharge in this case, when pleaded in a Virginia forum, as a bar to a suit founded upon a contract originating in this State, between parties, who at the date of the contract, were citizens. Gibson has done nothing from which it can be inferred that he assented to the discharge of his debtor under the laws of Maryland. So far as by his own acts he became a party to the proceedings, he took part in opposition to, and not as assenting to or ratifying the discharge.
*328 The question which he submitted for the decision of the Court, and which he contested on the trial of his allegations, with his debtor, was, whether the latter had not been guilty of fraud in concealing his property; and ha(j (.jjjjg deprived himself wholly of the benefit of the act. Can it be truly said, that by thus becoming a party to the proceedings for one purpose, he thereby became a party for all purposes connected with the discharge of his debt; and conferred upon the Court a power which it would not otherwise have had, to bind him by its judgment. I think not. The defect of power in the Court to order a discharge of the debt that would be valid in another forum, arises not only out of a want of jurisdiction over the person, but also out of a want of jurisdiction over the subject matter. The person of the creditor and the contract were both subject to the laws of another forum. If the voluntary appearance of the creditor to contest the discharge, on the ground that the debtor had rendered an unfair schedule, could have the effect of removing the first objection to the jurisdiction of the Court, this is, certainly, all that could be claimed for it. It could not have the effect to impart jurisdiction to the Court over the subject matter. It has been decided that when there is a want of jurisdiction over the subject matter, a judgment of the Court upon it, though regularly obtained upon such proceedings as would be proper in a case clearly within the jurisdiction of the Court, cannot be used as an estoppel, even against the party who instituted the proceedings. It is still in the power of such party to object the want of jurisdiction ; and treat the judgment as a nullity. In the case of Blin v. Campbell, 14 John. R. 432, the plaintiff had brought an action of assault in a Justice’s Court, in which a trial was had and a judgment rendered against him. He afterwards brought an action on the case for the same injury in another Court, and was met by a plea of the former trial and *329 judgment. The Supreme Court of New York held, that inasmuch as the justice had no jurisdiction over actions of assault and battery, the former judgment was null, and could not be pleaded in bar of the second suit. Other cases in the same Court have gone to the extent, that where a Court is expressly inhibited by law from taking jurisdiction of a subject, no consent of parties could confer jurisdiction ; and that a confession of judgment even would be a mere nullity. Thus in the case of Coffin v. Tracy, 3 Caines’ R. 129, a confession of judgment by an executor in a Justice’s Court, was held wholly invalid ; there being a statute of New York forbidding justices to hold pleas in cases where executors or administrators are parties on either side.
The same principle was recognized in the case of Striker v. Mott, 6 Wend. R. 465. And in this Court, in the cases of M'Call v. Peachy, 1 Call 55, and Clarke v. Conn, 1 Munf. 160, the general principle was asserted, that when the Court had not jurisdiction of the subject matter, the consent of parties cannot give it.
In this aspect of the case, it does not seem to. be material whether the want of jurisdiction in the County Court of Maryland to make an order for the discharge of a debtor, reaching to contracts made in other States, and between citizens of such other States, be placed on the ground assumed in the third resolution of the Supreme Court, in the case of Ogden v. Saunders, to wit, that “ the exercise of such a power is incompatible with the rights of other States, and with the constitution of the United Statesor on the general doctrine of international law, that the discharge of a contract by the laws of a country in which the contract was not made or to be performed, will not be a discharge in any other country. Upon the first hypothesis there would be an inhibition to the jurisdiction of the Court, which the mere appearance of the party to oppose the discharge could not remove ; and upon the second, a mere want of *330 power in the Court over the subject matter, which such appearance could not confer. In this view I am further sustained by the decision of the Supreme Court of Connecticut, in the case of Norton v. Cook, 9 Conn. R. 314. In that case the discharge was obtained in New York, in pursuance of an act of the Legislature of that State, and purported to discharge the debtor from all debts, &c. due before the assignment of his property under the act. The contract was made in New York, and the discharge obtained at a time when the creditor was a citizen of Connecticut, and the debtor a citizen of New York. In a suit brought in Connecticut on the contract, the discharge was regularly pleaded; and it was averred in the plea that upon a citation to appear before the Judge before whom the insolvent’s petition was pending, and shew cause why the insolvent should not be discharged, the defendant and plaintiff had both appeared before said Judge, and were fully heard on said petition. From a judgment of the Court, deciding the plea to be insufficient, there was an appeal, and the judgment of the Court below affirmed. The Supreme Court of Connecticut, after first deciding that the discharge was, under the authority of the cases decided by the Supreme Court of the United Slates, invalid, proceeded to consider whether the creditor had done any act which precluded him from insisting on its invalidity. “It is averred in the plea, (said the Judge delivering the opinion of the Court,) that the plaintiff was cited to appear, and did appear by attorney, before the Judge, and was fully heard on the debtor’s petition then pending. And it is contended that by this act he has waived his extra-territorial immunity, and submitted himself to the laws of the State of New York. The case of Clay v. Smith has been relied on as sustaining this position. In that case the only point decided was, that the defendant having obtained his certificate of discharge under a State law, and the plaintiff having come in and received his dividend under the law, was no longer at li *331 berty to question its constitutionality.” “ It is very manifest that this case is not like the present, in point of fact; and I think there is a clear distinction between them in point of principle. There, the plaintiff might be considered as acquiescing in the validity of the discharge, by coming in voluntarily and accepting a dividend under it. But here no such inference can be drawn. The clear inference from the averments in the plea, is, that the plaintiff appeared to oppose the motion; and it would be difficult to conceive upon what principle he can be considered as acquiescing in the constitutionality of a law, when, for aught that is shewn, the very object of his appearing was to make it appear that the law was unconstitutional.”
I do not deem it necessary to express any opinion as to the propriety of the decision, in the foregoing case, upon the first question therein presented, but I rely upon the reasoning of the Court upon the second branch of the case, as strong in support of the view I have taken of the effect that Gibson’s appearance to contest his debtor’s discharge, ought to have upon his rights.
I have not seen any decision of the Supreme Court of the United States, or of any of the State Courts, maintaining the proposition that a discharge of an insolvent debtor, under the laws of one State would, of itself, be valid as a discharge of a contract made in another State between citizens of such other State; and there has not, in my opinion, been any thing in the conduct of the creditor to bring him within the influence of the case of Clay v. Smith, or to debar him of the privilege of insisting upon the invalidity of the discharge before a Virginia forum. I am of opinion therefore to affirm the decree.
The other Judges concurred in the opinion of Judge Daniel.
Decree affirmed.